**STATE, Plaintiff-Appellee, v. CROSS, Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23985.   Decided October 31, 1956.

276

Frank T. Cullitan, Pros. Atty., for plaintiff-appellee.
George J. McMonagle, for defendant-appellant.

## OPINION
By SKEEL, J.

This appeal on questions of law from a judgment entered on the verdict of guilty on a charge of manslaughter in the second degree returned by a jury comes to this Court claiming the following errors:

"1. Misconduct of the prosecuting attorney of such a nature as to deprive the defendant of a fair trial in that:

"A. Portions of his argument to the jury were of an inflammatory and prejudicial nature in that he accused the defendant of butchering people in the street; that the decedent's life was crushed out of him by a sleeping truck driver and other equally inflammatory and prejudicial statements which, upon motion, the court neither directed the jury to disregard nor granted the motion for withdrawal of a juror.

"B. By suggesting in his examination of the defendant that defendant had been arrested and convicted of crimes involving moral turpitude and which constituted violations of the laws of the United States of America and of the State of Ohio without any foundation in truth or in fact therefor.

"2. Error of law occurred at the trial in the following respects:

"A. The court refused the request of counsel for the defendant to

instruct the jury in respects requested by the jury for further instructions, specifically, in that the court refused to instruct the jury that:

"1. The decedent was not in the lawful use of the highway if he was crossing the street other than on the marked crosswalk.

"2. That if the jury finds that the decedent was riding a bicycle at the time and place in question, then that §4511.46 R. C., would not apply herein.

"B. Failure and refusal of the court to withdraw a juror and declare a mistrial because of the inflammatory and prejudicial argument of the prosecuting attorney.

"C. Failure of the court to grant the motions of the defendant made at the close of the plaintiff's testimony and renewed at the conclusion of all the testimony, as follows:

"1. That consideration of §§4511.46, 4511.38, 4511.20 R. C., be stricken from the indictment and withdrawn from the consideration of the jury, and

"2. That the court enter its order discharging the defendant.

"D. Error in the charge in chief.

"3. Error of law on the admission and rejection of evidence prejudicial to the defendant.

"4. That the verdict is not sustained by sufficient evidence.

"5. That the verdict is contrary to law."

The record shows that the defendant was driving a truck east on Detroit Avenue in the City of Lakewood, and had come to a stop at the intersection of Detroit Avenue and Andrews Avenue. The traffic light controlling traffic at the intersection was then showing red or stop for Detroit Avenue traffic and green or go for north and southbound traffic over Andrews Avenue and Elmwood Avenue which latter street intersects Detroit Avenue immediately east of the east line of Andrews Avenue. The traffic light at this intersection is in the center of Detroit Avenue and approximately opposite the west sidewalk line of Elmwood Avenue and the east sidewalk line of Andrews Avenue. There is a marked crosswalk running diagonally to the southeast from the west side of Andrews Avenue to the west side of Elmwood Avenue. There is also a double line painted on the pavement indicating the place to stop upon the red signal, the same beginning about twenty feet west of the original crosswalk at the south curb of Detroit Avenue and ending in the middle of said Avenue just west of the west line of the diagonal crosswalk. The place where the defendant stopped his truck was over this double line and close to the crosswalk in the middle lane for eastbound traffic with the left side of his truck near the center of Detroit Avenue. There is no question but that the traffic light was red for east and west traffic at the time the defendant stopped his truck.

The deceased, a boy nine years of age, had been in a store on the south side of Detroit Avenue, the entrance to which was a few feet west of where the double stop line is located (above described) just west of the intersection of Elmwood Avenue. He had his bicycle with him. While the traffic light was in his favor for north and southbound traffic crossing Detroit Avenue from either Elmwood Avenue going north or Andrews Avenue going south, he started northerly over Detroit Avenue. One wit-

ness testified he was walking in the crosswalk, pushing his bicycle, which was to his left, while another witness said he was riding his bicycle on or just west of the crosswalk. The first witness referred to testified that just as the boy reached a point directly in front of the truck, the traffic light changed from red to green or go for Detroit Avenue traffic and defendant's truck started up, knocking the boy and bicycle to the pavement and running over him. The second witness referred to said that as the boy was riding north across Detroit Avenue and had reached a place at about the right front corner of the truck, the light changed to green for Detroit Avenue. The truck then started knocking the boy from his bicycle by contact with the right of the front bumper and in some way some part of the bicycle caught on the truck "spinning the bike around, bringing the boy back under the truck. The truck proceeded on and the rear dual wheels went over the boy and the bike and kept on going. * * *" These are the only witnesses who testified to actually seeing the collision. There is no doubt but that the boy came to his death as a proximate result of being run over by the truck then being operated by the defendant. The defendant testified he did not look to the right or left when he started up or that he saw the boy at any time and did not know he had run over him until he was so notified by another after proceeding almost across the intersection of Elmwood Avenue with Detroit Avenue to the east.

The indictment charges that the defendant unintentionally caused the death of the decedent as a proximate result of the unlawful operation of his truck on a public street in the violation of §§4511.38, 4511.20 and 4511.46 R. C., which sections provide insofar as applicable:

"Sec. 4511.38 R. C. (§6307-37 GC). No person shall start a vehicle, streetcar, or trackless trolley which is stopped, standing, or parked until such movement can be made with reasonable safety. . ."

"Sec. 4511.20 R. C. (§6307-20 GC). No person shall operate a vehicle, trackless trolley, or streetcar without due regard for the safety and rights of pedestrians and drivers and occupants of all other vehicles, trackless trolleys, and streetcars, so as to endanger the life, limb, or property of any person while in the lawful use of the streets or highways.

"Sec. 4511.46 R. C. (§6307-45 GC). The operator of any vehicle, streetcar, or trackless trolley shall yield the right of way to a pedestrian lawfully crossing the roadway within any crosswalk."

The first claim of error has to do with alleged improper argument by the prosecutor claimed to be of such character as to inflame the jury to the defendant's prejudice. The prosecutor said in part in his closing argument to the jury:

"Now, I hope, and I believe in your listening to Judge Mahon's charge, his instructions, 'I had the green light' doesn't give everybody, all the drivers, a license to butcher people in the street. 'I had the green light. I can do anything with that green light. It's all I care about. I had the green light.' That's the whole crux of this case.

"* * *

"He seems to distinguish between a person getting crushed to death by a car going 80 to 100 miles an hour. That type of manslaughter,

that's a different type than a boy who has had the life crushed out of him by a sleeping truck driver.

"MR. McMONAGLE: Objection, your Honor. There's no evidence that he was sleeping.

"THE COURT: Yes, sustained. There is no evidence to that effect.

"MR. McMONAGLE: Your Honor, I also, I didn't want to interrupt him before, but he talked about butchering. I ask the court to instruct the jury to disregard that, in the alternative to withdraw a juror.

"THE COURT: Yes, the jury will be guided solely by the evidence in this case."

The context in which the word "butchering" was used was general and not against the defendant alone, as claimed by the defendant in his assignment of error No. 1, (A). In any event, no objection was entered until at a later part of the prosecutor's argument when, upon objection, the court in effect granted defendant's request and informed the jury to disregard the suggestion that the defendant was asleep and that the jury should look to the evidence in the defendant's late protest to the use of he word "butcher." We find no prejudice to the defendant on this assignment of error.

When the defendant was cross-examined by the prosecutor after his examination in chief, the prosecutor asked the defendant:

"Sir, have you ever been arrested and convicted for any violation of a state statute or federal statute?

"MR. McMONAGLE: Objection.

"THE COURT: He may answer that.

"A. No, sir."

We hold that this question was proper and that the defendant could, therefore, not be prejudiced thereby.

The last of the errors presented in the defendant's brief deals with the general charge and with instructions given upon request of the jury after they had been deliberating on their verdict.

The part of the general charge complained of was as follows:

"The State alleges that the defendant violated three Sections of what is known as the Uniform Traffic Act of Ohio.

"The first Section which the State claims the defendant violated is §4511.20 R. C., and that Section reads as follows:

" 'No person shall operate a vehicle, trackless trolley or street car without due regard for the safety and rights of pedestrians or drivers and occupants of all other vehicles, trackless trolleys and street cars so as to endanger the life, limb or property of any person while in the lawful use of those streets or highways.'

"This statute imposes upon every driver of a motor vehicle upon the highways the duty to exercise due regard for the safety and rights of pedestrians and drivers and occupants of all other vehicles while in the lawful use of the streets or highways.

"Was the decedent, that is, Myron E. Ramey, in the lawful use of the highway?

"It imposes upon the defendant in this case the duty to use ordinary care in keeping a lookout ahead and to make observations so that he

might in the exercise of ordinary care observe the presence and position of other users of the street and take whatever steps an ordinary, prudent person would take under similar circumstances to avoid injury to others.

"The Court instructs you that under this law the standard of conduct required of the defendant as a driver of a vehicle is that of ordinary care, namely, such care as an ordinarily prudent and careful person would use under the same or similar circumstances having due regard for the rights of others.

"Now, the second section which the State claims the defendant violated is §4511.38 R. C., which reads as follows:

" 'No person shall start a vehicle, street car or trackless trolley which is stopped, standing or parked until such movement can be made with reasonable safety.'

"Now, this Section imposes upon the defendant the duty to use ordinary care as that term has been defined to you in the operation of a vehicle.

"The third Section which the State claims the defendant violated is §4511.46 R. C., and which reads as follows:

" 'The operator of any vehicle, street car or trackless trolley shall yield the right-of-way to a pedestrian lawfully crossing the roadway within any crosswalk.'

"Now, this Section imposes upon the operator of a vehicle the duty to yield the right-of-way to a pedestrian lawfully crossing the roadway within any crosswalk.

"Under this Section, Ladies and Gentlemen, it will be your duty to determine whether or not the deceased, Myron Ramey, was crossing in a crosswalk. It will also be your duty to determine whether or not he was a pedestrian.

"Now, a pedestrian has been defined in §4511.01, subsection V, R. C., as follows:

" 'Pedestrian means any natural person afoot.'

"It will be your duty to determine, as I said before, whether or not the deceased was a pedestrian."

It has been held that §4511.20 and §4511.38 R. C., do not define a specific course of conduct but rather prescribe general rules, and that their violation does not constitute negligence per se. Rather negligence must be shown to establish that the act was unlawfully committed. In the case of **Koppelman v. Springer, 157 Oh St 117**, the Supreme Court said, in dealing with §4511.20 R. C., in a civil case:

"1. Under the provisions of §6307-20 GC, no person shall operate a vehicle, trackless trolley or streetcar without due regard for the safety and rights of pedestrians and drivers and occupants of all other vehicles, trackless trolleys and streetcars, and so as to endanger the life, limb or property of any person while in the lawful use of the streets or highways.

"2. This statute prescribes merely a general rule of conduct and not a specific requirement to do or not to do a particular act.

"3. A violation of the provisions of this statute does not constitute negligence per se."

And in the case of **Morrin v. Bond, 87 Oh Ap 357**, the court held, in

dealing with §4511.20 **R. C.**, that a motorist was bound to exercise ordinary care in entering and crossing an intersection, having due regard to the safety and rights of a bicyclist. Under the theory of these cases, the duty imposed under these sections is that of ordinary care in relation to the specific circumstances to which the section refers. This same rule would be applicable to §4511.38 **R. C.** The court, therefore, correctly charged the jury as to the defendant's duty, as directed by these statutes, being based on the exercise of ordinary care. We find no error in the general charge prejudicial to the rights of the defendant.

Some requests to charge on specific questions of law were made by the defendant when the jury had returned to the jury box after submission of the case seeking further instructions or a restatement of statutory provisions or a rereading of instructions previously given. It was at this time that the defendant requested the court to instruct the jury as to what was meant by a person being in the lawful use of the street and further requested the court to state to the jury that one who starts across a street, other than a crosswalk, is not in the lawful use of the street. At the conclusion of the court's general charge, both parties were given the opportunity to suggest omissions or additions at which time the defendant (as well as the state), stated he had nothing to suggest. Any request to charge thereafter made that is made when the jury of its own motion was returned to the jury box for further instructions comes too late. The record also shows that the subject of such requests, at least in part, had been included in the general charge, or was unnecessary under the facts of the case. It also appears that the court's additional instructions requested by the jury during their deliberations were sufficiently answered by the court. No error prejudicial to the rights of the defendant is here shown by the record and such claims are overruled.

From a complete examination of this record, which, without any question tends to establish and is uncontroverted that the defendant, starting his truck from a standing position at a street intersection in the business section of a city, controlled by a traffic light, when the green light turned in his favor, and the decedent was then directly in front of him or just to his right and either the center of the front of his truck or the bumper on the right front of the truck struck the decedent, all of which took place in front of the driver, he then failing to see what was there to see, continued on, running over the decedent with the back wheels of the truck, causing his death, makes out a clear case of manslaughter, the evidence clearly showing the death was the proximate result of a violation of §4511.38 **R. C.** There is no doubt but that a fair trial has been afforded the defendant and substantial justice has been done. His appeal for reversal must, therefore, be overruled and the judgment of guilty affirmed upon the authority of §2945.83 **R. C.**

Judgment affirmed. Exceptions. Order see journal.

KOVACHY, PJ, HURD, J, concur.