OPINION
{¶ 1} Plaintiffs-appellants Donald M. Krause, et al. appeal from the October 29, 2001, September 5, 2001, October 26, 2000, and February 11, 2000, Judgment Entries of the Stark County Court of Common Pleas.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On January 21, 1998, at approximately 6:00 p.m., Mary Jane Krause was struck by a vehicle operated by appellee Paul J. Streamo while she was walking home from the grocery store. Mrs. Krause, who was 77 years old at the time of the accident, was survived by five children.
 {¶ 3} Thereafter, on September 20, 1999, appellants, Donald M. Krause, individually and as the Administrator of the Estate of Mary Jane Krause, and Mrs. Krause's four other children filed an action for wrongful death and declaratory judgment against Paul J. Streamo, David L. Streamo, Progressive Insurance Company, Sentry Insurance Company and State Farm Mutual Automobile Insurance Company in the Stark County Court of Common Pleas. While David L. Streamo was the owner of the motor vehicle operated by appellee Paul J. Streamo on the date in question, the three insurance companies insured the decedent's children under various automobile insurance policies. Appellants specifically sought underinsured motorist coverage under such policies.
 {¶ 4} Subsequently, both appellee Progressive Insurance Company and appellee State Farm Mutual Automobile Insurance Company filed motions for summary judgment arguing that, pursuant to R.C. 3937.18(A)(2) as amended by Am.Sub. S.B. 20, underinsured motorist coverage was not available to appellants. Both motions for summary judgment were granted by the trial court as memorialized in Judgment Entries filed on February 11, 2000, and October 26, 2000.[1]
 {¶ 5} The parties in this matter stipulated that appellants' claims against appellee Paul J. Streamo and against David L. Streamo would be tried only on issues of liability. Therefore, a jury trial commenced on August 14, 2001. After appellants rested, trial counsel moved for a directed verdict pursuant to Civ.R. 50 on behalf of appellee Paul J. Streamo and David L. Streamo. While the trial court sustained David L. Streamo's motion for a directed verdict, the trial court denied the motion in regard to appellee Paul J. Streamo.[2] The trial court also denied the motions for a directed verdict that were made by appellee Paul J. Streamo and by appellants at the close of all of the evidence. Subsequently, the jury, on August 17, 2001, returned with a verdict in favor of appellee Paul J. Streamo and against appellants. The jury specifically found in an interrogatory that appellee Paul J. Streamo was not negligent. A Judgment Entry memorializing the jury's verdict was filed on September 5, 2001.
 {¶ 6} On September 13, 2001, appellants filed a Motion for Judgment Notwithstanding the Verdict or for a New Trial arguing that (1) reasonable minds could only come to one conclusion and that conclusion is adverse to appellee Paul J. Streamo, (2) the judgment was against the weight of the evidence, and (3) the judgment was contrary to law. Pursuant to a Judgment Entry filed on October 29, 2001, the trial court denied appellants' motion.
 {¶ 7} It is from the trial court's October 29, 2001, September 5, 2001, October 26, 2000, and February 11, 2000, Judgment Entries that appellants now appeal, raising the following assignments of error:
 {¶ 8} "I. THE TRIAL COURT BELOW ERRED TO THE PREJUDICE OF THE APPELLANTS BY OVERRULING APPELLANTS' MOTIONS FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR, ALTERNATIVELY, FOR A NEW TRIAL.
 {¶ 9} "II. THE TRIAL COURT BELOW ERRED TO THE PREJUDICE OF THE APPELLANTS BY OVERRULING APPELLANTS' MOTION FOR DIRECTED VERDICT AT THE CLOSE OF PAUL J. STREAMO'S CASE-IN-CHIEF.
 {¶ 10} "III. THE TRIAL COURT BELOW ERRED TO THE PREJUDICE OF THE APPELLANTS BY ENTERING JUDGMENT IN FAVOR OF PAUL J. STREAMO WHEN THAT JUDGMENT WAS CONTRARY TO LAW.
 {¶ 11} "IV. THE TRIAL COURT BELOW ERRED TO THE PREJUDICE OF THE APPELLANTS BY ENTERING JUDGMENT IN FAVOR OF PAUL J. STREAMO WHEN THAT JUDGMENT WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 12} "V. THE TRIAL COURT BELOW ERRED TO THE PREJUDICE OF THE APPELLANTS BY SUSTAINING THE SUMMARY JUDGMENT MOTIONS OF PROGRESSIVE INSURANCE COMPANY AND STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY UPON R.C. 3937.19(A)(2), AS AMENDED BY AM. SUB. S.B. 20, IN THAT AM. SUB. S.B. 20 VIOLATES ARTICLE I, SECTION 19A; ARTICLE I, SECTION 16; ARTICLE I, SECTION 2; AND ARTICLE IV, SECTION I OF THE OHIO CONSTITUTION."
 I {¶ 13} Appellants, in their first assignment of error, argue that the trial court erred by overruling appellants' motion for judgment notwithstanding the verdict pursuant to Civ.R.50(B) or, alternatively, for a new trial pursuant to Civ.R. 59(A). We disagree.
 {¶ 14} When reviewing a trial court's disposition of a Civ.R. 50(B) motion for judgment notwithstanding the verdict, we apply the same test as applied in reviewing a motion for a directed verdict. Pariseauv. Wedge Products, Inc. (1988), 36 Ohio St.3d 124, 127, 522 N.E.2d 511. A motion for judgment notwithstanding the verdict is used to determine only one issue, i.e., whether the evidence is totally insufficient to support the verdict. 2 Baldwin's Ohio Civil Practice, Section 51.03. Thus, the evidence admitted at trial must be construed most strongly in favor of the party against whom the motion is made, and, where there is evidence to support that side of the case, the motion must be denied. Id. Neither the weight of the evidence nor the credibility of the witnesses is a proper consideration for the court. Posin v. A.B.C. MotorCourt Hotel, Inc. (1976), 45 Ohio St.2d 271, 275, 344 N.E.2d 334. See, also, Civ.R. 50(B); and Osler v. Lorain (1986), 28 Ohio St.3d 345, 347,504 N.E.2d 19. In other words, if there is evidence to support the nonmoving party's side so that reasonable minds could reach different conclusions, the court may not usurp the jury's function and the motion must be denied. Osler, supra.
 {¶ 15} With respect to the trial court's denial of appellants' motion for new trial, the applicable standard of review is abuse of discretion. Highfield v. Liberty Christian Academy (1987),34 Ohio App.3d 311, 518 N.E.2d 592. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E.2d 1140. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably in denying such motion.
 {¶ 16} Appellants, in the case sub judice, initially argue that the trial court erred in overruling appellants' motion for judgment notwithstanding the verdict or, alternatively, for a new trial, since appellee Paul J. Streamo is guilty of negligence per se since he violated the Massillon City Code. Appellants specifically point to Massillon City Code Section 371.01(a), captioned "Right of Way in Crosswalk," which states, in relevant part, as follows: "When traffic control signals are not in place, not in operation or are not clearly assigning the right of way, the driver of a vehicle shall yield the right of way, slowing down or stopping if need be to so yield or if required by Section 313.09, to a pedestrian crossing the roadway upon which the vehicle is traveling, or when the pedestrian is approaching so closely from the opposite half of the roadway so as to be in danger." The term "crosswalk" is defined in Massillon City Code Section 301.09(a) as including "[t]hat part of a roadway at intersections ordinarily included within the real or projected prolongation of . . . curb lines or, in the absence of curbs, the edges of the traversable roadway . . ." In turn, Massillon City Code Section 301.32 defines "right of way", in pertinent part, as follows:
 {¶ 17} "Right of Way" means either of the following, as the context requires:
 {¶ 18} "(a) The right of a vehicle or pedestrian to proceed uninterruptedly in a lawful manner in the direction in which it or he is moving in preference to another vehicle or pedestrian approaching from a different direction into its or his path;"
 {¶ 19} Where a statute sets forth a "specific duty for the safety of others," failure to perform the same constitutes negligence per se.Chambers v. St. Mary's School, 82 Ohio St.3d 563, 565, 1998-Ohio-184,697 N.E.2d 198, quoting Eisenhuth v. Moneyhon (1954), 161 Ohio St. 363,119 N.E.2d 440, paragraph two of the syllabus. In situations where a statutory violation constitutes negligence per se, the plaintiff will be considered to have "conclusively established that the defendant breached the duty that he or she owed to the plaintiff." Chambers, supra at 565. In Swoboda v. Brown, (1935) 129 Ohio St. 512, 522, 196 N.E. 274, the Ohio Supreme Court held as follows:
 {¶ 20} "The distinction between negligence and `negligence per se' is the means and method of ascertainment. The former must be found by the jury from the facts, the conditions and circumstances disclosed by the evidence; the latter is a violation of a specific requirement of law or ordinance, the only fact for determination by the jury being the commission or omission of the specific act inhibited or required." (Emphasis added). In short, where a jury must determine the negligence or lack of negligence of a party charged with the violation of a statute from consideration and evaluation of multiple facts and circumstances and by applying the standard of care of a reasonable person, negligence per se is inapplicable. Id.
 {¶ 21} The trial court in this matter properly instructed the jury that "[w]hen traffic control signals are not present, the driver of a vehicle must yield the right of way to a person crossing the roadway within a crosswalk. . . . The driver's failure to do so is negligence per se." Massillon City Code Section 371.01(a), the section that imposes such duty, sets forth a specific duty for the safety of others. However, as noted by appellee in his brief, in order to support a finding of negligence per se under Massillon City Code Section 371.01(a), the jury was required to find that appellee committed the specific act inhibited or required. See Swoboda, supra. In other words, appellants were required to show, to the jury's satisfaction, that Mary Jane Krause was crossing within a "crosswalk", as defined above, and that she, therefore, had the right of way.
 {¶ 22} There is no dispute that Mary Jane Krause was not walking in a marked crosswalk at the time of the accident. However, while appellants contend that the facts show that Mrs. Krause was crossing Amherst Road within an unmarked crosswalk, and, therefore, had the right of way, appellee maintains otherwise.
 {¶ 23} At the trial in this matter, Bruce Enz, appellants' expert, opined that based on his testing, Mrs. Krause "was crossing in an unmarked crosswalk area which would have included the south side of Keuper down toward the south portion of Oxford, and she would have been standing approximately at the center of the roadway." Transcript, Volume 3 at 219. In contrast, the testimony of appellee's eyewitness, John Wolfe, placed Mrs. Krause in a location in Amherst Avenue, which would have been outside of even an unmarked crosswalk. The jury, as trier of fact, was entitled to find John Wolfe's testimony that Mrs. Krause was not walking within a unmarked crosswalk at the time of the accident to be credible.
 {¶ 24} Appellants also maintain that appellee Paul J. Streamo was negligent per se for violating Massillon City Code Section 371.03. Pursuant to Massillon City Code Sec. 371.03:
 {¶ 25} "371.03 CROSSING ROADWAY OUTSIDE CROSSWALK; DIAGONAL CROSSING AT INTERSECTIONS.
 {¶ 26} "(a) Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway. . . .
 {¶ 27} "(e) This section does not relieve the operator of a vehicle from exercising due care to avoid colliding with any pedestrian upon any roadway. (ORC 4511.48)"
 {¶ 28} According to appellants, since appellee Paul J. Streamo violated the above ordinance section, he is guilty of negligence per se. Such section, however, does not establish a "positive and definite standard of care" such that a jury could determine a violation of section 371.03 by the finding of a single issue of fact. See Eisenhuth, supra. Rather, with respect to such section, since the duty is undefined, the jury must determine the negligence or lack of negligence of appellee "from a consideration and evaluation of multiple facts and circumstances by the process of applying, as the standard of care, the conduct of a reasonably prudent person." Swoboda, supra. at 512. Violations of the same, therefore, do not constitute negligence per se.[3]
 {¶ 29} Appellants further contend that appellee Paul J. Streamo was negligent per se for violating Massillon City Code Section 331.33.
 {¶ 30} Massillon City Code Section 331.33 provides that:
 {¶ 31} "No driver shall enter an intersection . . . unless there is sufficient space on the other side of the intersection . . . to accommodate the vehicle he is operating without obstructing the passage of . . . pedestrians [in an intersection] . . ."
 {¶ 32} We find, however, that such section is not applicable to the facts of this case. Moreover, assuming arguendo, that such section is applicable, we note that Massillon City Code Section 331.33 is consistent with Massillon City code Section 371.01(a), which mandates that a driver yield the way to a pedestrian in a crosswalk when there are no traffic control signals. At trial, appellants' eyewitness Deborah Sommer, in her traffic accident witness's statement which was admitted at trial as Defendant's Exhibit D, indicated, when asked, that she was uncertain whether Mrs. Krause was in an intersection. In addition, Dennis Schen, during his testimony, testified that Mrs. Krause was south
of the intersection of Amherst and Kemper. Thus, the jury could have found that Mrs. Krause was not in an intersection when she was struck.
 {¶ 33} Based on the foregoing, we find that there was sufficient evidence that appellee Paul J. Streamo was not negligent per se.
 {¶ 34} Appellants, in their first assignment, further contend that the trial court erred in overruling their motion for judgment notwithstanding the verdict pursuant or, alternatively, for a new trial since appellee Paul J. Streamo was guilty of ordinary negligence. According to appellants, there was unrefuted evidence that a reasonably prudent driver would have seen Mrs. Krause and avoided hitting her.
 {¶ 35} The essential elements of a negligence claim are duty, breach of that duty, and damage or injury as a proximate result of the breach. Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 284,423 N.E.2d 467. Negligence in a motor vehicle case is the failure to exercise ordinary care to avoid injury to others. McDonald v. Lanius
(Oct. 28, 1993), Marion App. No. 9-93-23, quoting 7 Ohio Jurisprudence 3d (1978) 483-484, Automobiles and Other Vehicles, Section 12. Ordinary care is a degree of care that an ordinarily reasonable and prudent person exercises, or is accustomed to exercising under the same or similar circumstances. Mussivand v. David, 45 Ohio St.3d 314, 318, 544 N.E.2d 265.
 {¶ 36} Appellants, in support of their argument that appellee Paul J. Streamo was negligent, emphasize that appellee Paul J. Streamo admitted that he was not looking for pedestrians in the intersection where he struck Mrs. Krause, that he was driving the same way at night as he drives during daylight hours, and that he did not slow down when approaching the intersection. Appellants also point out that Bruce Enz, their expert, opined that a motorist keeping a reasonable lookout would have seen Mrs. Krause before hitting her.
 {¶ 37} During the trial in this matter, Dennis Schen, appellants' witness, was traveling on Amherst Road at the time of the accident. Dennis Schen testified as follows when asked when he first saw Mrs. Krause while she was crossing the road:
 {¶ 38} "A. She couldn't have been more than two or three feet from my car.
 {¶ 39} "Q. And that's when you first saw her?
 {¶ 40} "A. Yes.
 {¶ 41} "Q. Uh, and that's because you were looking straight ahead and not off to your left?
 {¶ 42} "A. Right. When — as you make that turn —
 {¶ 43} "Q. Yes.
 {¶ 44} "A. — you know, your headlights and everything are going this way (indicating) so as I'm going straight ahead, yes, I was looking straight out.
 {¶ 45} "Q. So you, so you weren't looking for pedestrians?
 {¶ 46} "A. No, I was not.
 {¶ 47} "Q. So then what got your attention that she was there when you first saw her?
 {¶ 48} "A. She did catch my headlights when I got into that lane. Transcript, Volume 2 at 10-11."
 {¶ 49} During his testimony, Dennis Schen further testified that it was dark outside, that Mrs. Krause did not have anything "bright" on, that the accident happened in a matter of seconds, and that he was not looking for any pedestrians. When asked whether he did not see Mrs. Krause until she was two or three feet away because he was not looking for pedestrians, Dennis Schen responded as follows:
 {¶ 50} "Uh, I don't think so. It was dark. I mean, there was nothing there to indicate that anybody was, uh — if it would — — you know, what I had saw when the, the brief instance I saw her wasn't anything bright so I know that she didn't have anything bright on so I don't think I would have seen her because of the time of day." Transcript, Volume 2 at 24.
 {¶ 51} Deborah Sommer, another independent witness who was driving on Amherst Road at the time of the accident, testified at trial that she also was not looking for pedestrians, and that although she was driving a pick up truck, which sits up higher than a car, she did not observe Mrs. Krause until after the accident. When Ms. Sommer was asked whether she had indicated during questioning whether the "whole sequence of events took place very quickly," Ms. Summer responded as follows: "Seconds." Transcript, Volume 2 at 48. According to Deborah Sommer, the area where the accident occurred was "fairly dark" and there was poor visibility in the area because of the glare of headlights. Transcript, Volume 2 at 52, 55. Such testimony, in conjunction with appellee Paul J. Streamo's testimony that he had his headlights on and that the area was dimly lit, supports the jury verdict in favor of appellee Paul J. Streamo. The jury, based on the foregoing, clearly found that a reasonably prudent person would not have seen Mrs. Krause so as to avoid hitting her.
 {¶ 52} Based on the foregoing, we find that the trial court did not err by overruling appellants' motion for judgment notwithstanding the verdict pursuant to Civ.R.50(B) or, alternatively, for a new trial pursuant to Civ.R. 59(A). Construing the evidence most strongly in appellee's favor, we find that there was evidence supporting appellee's side of the case. Moreover, with respect to the trial court's denial of appellant's motion for a new trial, we find that such decision was not arbitrary, unconscionable or unreasonable.
 {¶ 53} Appellants' first assignment of error is, therefore, overruled.
 II {¶ 54} Appellants, in their second assignment of error, contend that the trial court erred in denying their motion for a directed verdict at the close of appellee Paul J. Streamo's case in chief. The trial court, denied appellants' motion, finding that there were genuine issues of material fact.
 {¶ 55} Civ.R. 50(A)(4) establishes the procedure for a court to follow in granting a directed verdict: "When a motion for a directed verdict has properly been made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue." "`[I]f all the evidence relating to an essential issue is sufficient to permit only a conclusion by reasonable minds against a party, after construing the evidence most favorably to that party, it is the duty of the trial court to instruct a finding or direct a verdict on that issue against that party." O'Day v. Webb (1972), 29 Ohio St.2d 215, 220, 280 N.E.2d 896. If there is substantial competent evidence to support the party against whom a motion for directed verdict is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied.Wagner v. Roche Laboratories, 77 Ohio St.3d 116, 119, 1996-Ohio-85,671 N.E.2d 252. "A motion for directed verdict "* * * does not present factual issues, but a question of law, even though in deciding such a motion, it is necessary to review and consider the evidence." Id., quoting O'Day, paragraph three of the syllabus.
 {¶ 56} Appellants, in arguing that they were entitled to a directed verdict, argued, in part, as follows:
 {¶ 57} "Uh, so the unrebutted facts regarding what Mr. Streamo should have been able to see if he was a reasonably prudent driver and the location of Ms. Krause in an unmarked crosswalk and that indeed there is such a thing as an unmarked crosswalk in the City of Massillon establishes that she had the right of way, that he had the duty of care, that he breached the duty and she had a right to be there and he had an obligation to yield to her." Transcript, Volume 4 at 64.
 {¶ 58} However, we find that the trial court did not err in denying appellants' motion for a directed verdict. While appellants argue that there was unrebutted evidence that appellee Paul J. Streamo was negligent per se in violating Massillon City Code Section 371.01(a), as is set forth in detail above in our discussion of appellants' first assignment of error, there was sufficient competent and credible evidence presented at trial that Mrs. Krause was not in an unmarked crosswalk and that, therefore, appellee was not negligent per se. Furthermore, construing the evidence in appellee's favor, we find that there was evidence from which a jury could conclude that a reasonably prudent driver would not have been able to see Mrs. Krause. Since, therefore, there were genuine issues of fact in dispute for the jury's consideration, the trial court did not err in denying appellants' motion for a directed verdict.
 {¶ 59} Appellants' second assignment of error is, therefore, overruled.
 III, IV {¶ 60} Appellants, in their third and fourth assignments of error, maintain that the trial court's judgment in favor of appellee Paul J. Streamo was both contrary to law and against the manifest weight of the evidence.
 {¶ 61} Appellants, in support of their argument that the judgment is contrary to law, argue that appellee Paul J. Streamo was negligent per se for violating Massillon City Code Section 371.01(a), which requires the driver of a motor vehicle to yield the right of way to a person crossing the roadway within a crosswalk, and that appellee Paul J. Streamo failed to exercise his duty of ordinary care to pedestrians.
 {¶ 62} However, as is stated above, contrary to appellants' arguments, there was conflicting testimony as to whether Mrs. Krause was, in fact, walking within a crosswalk at the time of the accident and whether appellee Paul J. Streamo exercised ordinary care. While appellants' witnesses, including Bruce Enz, their expert witness, placed Mrs. Krause within an unmarked crosswalk, appellee's eyewitness, John Wolf, placed her outside of the same. While appellants argue that John Wolf's testimony has no probative value since it is "positively contradicted by established facts", we note that the jury, as trier of fact, was in the best position to assess credibility. Clearly, the jury found John Wolf to be a credible witness. In addition, there was conflicting testimony adduced at trial regarding whether appellee Paul J. Streamo exercised ordinary care. While Bruce Enz, based upon his extensive studies, opined that a motorist keeping a reasonable look out would have seen Mrs. Krause, contrary to appellants' arguments, his testimony was not unrebutted. Rather, testimony was adduced at trial from appellant's own witnesses that it was dark outside, that Mrs. Krause was difficult to see and was wearing dark clothing and the accident occurred in seconds. Such witnesses also testified that they were not looking for pedestrians in the area. In short, there was testimony to the effect that a reasonably prudent driver would not have seen Mrs. Krause in the road.
 {¶ 63} With respect to appellants' argument that the judgment is against the manifest weight of the evidence, we note that we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA 5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E.Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279, 376 N.E.2d 578.
 {¶ 64} Based upon our review of the record, we find, as is set forth in detail above, that there was competent and credible evidence supporting the jury's verdict in favor of appellee Paul J. Streamo. While there may have been conflicting testimony, the jury, as trier of fact, was in the best position to assess the witnesses' credibility.
 {¶ 65} Appellants' third and fourth assignments of error are, therefore, overruled.
 V {¶ 66} Appellants, in their fifth assignment of error, assert that the trial court erred in granting the motions for summary judgment filed by appellee Progressive Insurance Company and appellee State Farm Mutual Automobile Insurance Company. As is stated above, both appellee Progressive and appellee State Farm, in their motions, had argued that appellants were precluded from recovering underinsured motorist benefits under their respective automobile policies under R.C. 3937.18(A)(2) as amended by Am Sub. S.B. 20. Appellants now maintain that the trial court erred in sustaining both motions for summary judgment since R.C.3937.18(A)(2), as amended by Am.Sub.S.B. 20, is unconstitutional.
 {¶ 67} Appellants specifically contend that R.C. 3937.18(A)(2), as amended by Am.Sub.S.B. 20, violates Article I, Section 19a of the Ohio Constitution, Article I, Section 16 of the Ohio Constitution, and ArticleI Section 2 of the Ohio Constitution. This court, in the case ofHaddad v. State Farm Mut. Auto, Ins. Co. (Feb. 28, 2000), Stark App. No. 1999CA00262, previously held that R.C. 3937.18, as revised by S.B. 20, does not violate Article I, Section 16 (the Right to a Remedy Clause) or Article I, Section 2 (the Equal Protection and Privileges and Immunities Clause) of the Ohio Constitution. See also Beagle v. Walden,78 Ohio St.3d 59, 1997-Ohio-234, 676 N.E.2d 506. Previously, in Plottv. Colonial Ins. Co. (1998), 126 Ohio App.3d 416, 710 N.E.2d 740, we found that revised R.C. 3937.18 did not violate Article I, Section 19(a) of the Ohio Constitution.[4]
 {¶ 68} Appellants further maintain that R.C. 3937.18, as amended by Am.Sub.S.B. 20, violates the separation of powers in violation of Article IV, Section I of the Ohio Constitution. Regarding the challenge based on separation of powers, the Ohio Supreme Court in Beagle stated:
 {¶ 69} `[T]he legislature is the final arbiter of public policy, unless its acts contravene the state or federal Constitutions.' * * *
 {¶ 70} "The interpretation of R.C. 3937.18(A)(2) advanced inSavoie [v. Grange Mut. Ins. Co. (1993), 67 Ohio St.3d 500, 620 N.E.2d 809] did not meet with legislative approval. It was the General Assembly's prerogative to redress its dissatisfaction with new legislation. Id. at 62-63." Lemble v. Belknap, 147 Ohio App.3d 79, 84, 2001-Ohio-3108,768 N.E.2d 1196. Since based on the foregoing, R.C. 3937.18(A)(2), as amended by Am. Sub. S.B. 20, is constitutional, appellants' fifth assignment of error is overruled.
 {¶ 71} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.
By Edwards, J., Gwin, P.J. and Farmer, J. concur.
Topic: Judgment Notwithstanding Verdict — Summary Judgment
[1] On May 8, 2000, appellee Sentry Insurance Company, which insured Jonathan Krause, the decedent's son, also filed a Motion for Summary Judgment arguing that: (1) Jonathan Krause's underinsured motorist claim was precluded by virtue of his failure to exhaust the "tortfeasing Defendants' liability coverage and (2) such claim should be dismissed because appellee Sentry was prejudiced by a thirteen (13) month delay in notifying it about the accident. Pursuant to a Judgment Entry filed on July 25, 2000, the trial court denied such motion, finding that there were genuine issues of material fact. Thereafter, as memorialized in a Joint Stipulation filed on August 14, 2001, the parties agreed, in part, as follows:
 "It is further understood and agreed that if a verdict is rendered in favor of the defendants based upon a finding of comparative negligence of 51% or more on the part of the plaintiff's decedent, that this litigation will be considered at a conclusion and no further claims will be asserted against the defendants, Paul J. Streamo and David Streamo and/or Sentry Insurance.
 "It is further understood and agreed that the potential defendant, Sentry Insurance Company will waive any potential subrogation claims against either of the defendants Streamo."
[2] A Judgment Entry memorializing the trial court's ruling was filed on August 20, 2001.
[3] In State v. Cross (1956), 75 Ohio Law Abs. 275, 137 N.E.2d 690, the court held that a statute providing that "[n]o person shall operate a vehicle . . . without due regard for the safety and rights of pedestrians . . . so as to endanger the life, limb or property of any person while in the lawful use of the streets or highways" prescribed a general rule and that violation of the same, therefore, did not constitute negligence per se.
[4] Article I, Section 19(a) states as follows: "The amount of damages recoverable by civil action in the courts for death caused by the wrongful act, neglect, or default of another shall not be limited by law."